UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| DRUSILLA V. BEATTY, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 1:13-cv-217-DBH |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant | ) | |

# REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Supplemental Security Income ("SSI") appeal contends that the administrative law judge used an incorrect measure in deriving the plaintiff's residual functional capacity ("RFC"), improperly evaluated the opinions of two treating professionals, relied on an unsupported opinion from a nonexamining state-agency reviewer, improperly considered her work history, and improperly evaluated the function report completed by her husband. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from post

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), as amended effective January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the defendant to file a written opposition to the itemized statement. Oral argument was held before me on March 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. With the court's leave, the plaintiff's attorney appeared by telephone.

traumatic stress disorder ("PTSD"), panic disorder with agoraphobia, and dysthymia, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, Record at 56-57; that she retained the RFC for a full range of work at all exertional levels but was limited to occupations that involve only simple, routine, repetitive tasks, could not tolerate occupations that had sudden, unpredictable work place changes or situations requiring an immediate response to changing circumstances, could tolerate only occasional interaction and no cooperative task with coworkers and could not interact with the public, Finding 4, *id*. at 57-58; that she had no past relevant work, Finding 5, *id*. at 63; that, given her age (24 on the date that her application was filed, January 5, 2010), at least high school education, work experience, and RFC, there were jobs existing in significant numbers in the regional economy that she could perform, Findings 6-9, *id*.; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time from the date of the application through the date of the decision, December 5, 2011, Finding 10, *id.* at 64. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Activities of Daily Living

The plaintiff's first challenge to the administrative law judge's decision asserts that he erroneously "relied primarily on the Plaintiff's activities of daily living to determine that she has a work capacity." Statement of Specific Errors ("Itemized Statement") (ECF No. 13) at 2. A claimant's ability to perform activities of daily living, standing alone, cannot provide sufficient evidence to support an RFC. *Drew v. Astrue*, Civil No. 09-363-B-W, 2010 WL 1946335, at *4 n.4 (D. Me. May 12, 2010).

The administrative law judge did not base his RFC finding entirely, or even primarily, on the plaintiff's reported activities of daily living. In addition to that factor, he discussed in detail the notes and reports of treating medical professionals, the report of a consulting examining psychologist, her social functioning, her concentration, persistence, and pace, the opinions of two state-agency reviewers, and a function report from the plaintiff's husband. Record at 58-63.[2] He

---

[2] At oral argument, the plaintiff's attorney complained that, by concentrating on the plaintiff's activities of daily living, the administrative law judge overlooked the plaintiff's "real problems," because activities of daily living do not "address what happens as soon as she leaves her home." To the contrary, "activities of daily living" for purposes of Social Security cases are defined to include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a resident, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office," Listing 12.00(C)(1), as well as communication, social/interpersonal skills, use of community resources, functional academic skills, work, leisure, health, and safety, *Richardson v. Social Sec. Admin. Com'r*, No. 1:10-cv-00313-JAW, 2011 WL 3273140, at *7 (D. Me. July 29, 2011).

discussed the plaintiff's activities of daily living in connection with his evaluation of the plaintiff's credibility, which is the customary use of such evidence. *See, e.g., Smith v. Colvin*, No. 1:12-cv-300-NT, 2013 WL 3781480, at *5 (D. Me. July 18, 2013).

The plaintiff is not entitled to remand on this basis.

### B. Evaluation of Opinions of Dr. Hale and Tracey Minervino

The plaintiff was evaluated by John S. Hale, Jr., Ed.D., a psychologist, at the request of her attorney, Record at 341, and treated by Tracey Minervino, a licensed clinical social worker. The plaintiff contends that the administrative law judge did not "provide sufficient reason for dismissing the opinions of Dr. Hale." Itemized Statement at 7. The administrative law judge said the following about Dr. Hale:

> The claimant attended a consultative examination with John S. Hale Jr. EdD (Exhibit 16F). Dr. Hale noted that the claimant lacked flexibility in her affective expression and was not spontaneous (Exhibit 16F/5). The claimant presented flat, serious and stoic emotions (Exhibit 16F/5). The claimant's thoughts were clear, logical and well associated (Exhibit 16F/5). The claimant reported difficulty getting out of bed and a loss of energy and interests (Exhibit 16F.5). The claimant did not indicate that she possessed suicidal or homicidal ideation (Exhibit 16F/5). Dr. Hale reported that the claimant has the profile of an individual who seemingly internalizes her emotions and whose pathology would be experienced internally (Exhibit 16F/7). Dr. Hale noted that the claimant is an individual who is socially awkward and alienated and who avoids others, which may relate to past trauma, social shyness, social suspiciousness or has multiple etiologies (Exhibit 16F/7). Dr. Hale diagnosed the claimant with Posttraumatic stress disorder (Exhibit 16F/8).
>
> * * *
>
> Dr. Hale opined that the claimant's high levels of anxiety, and at times panic, would likely impact the claimant's ability to sustain employment as the claimant's ability to focus and complete tasks may be compromised (Exhibit 16F/9). Dr. Hale further opined that the claimant's emotional lability and interpersonal challenges may also compromise the claimant's ability to consistently follow work schedules or to demonstrate consistent and responsible work habits (Exhibit 16F/9). Dr. Hale had an opportunity to personally evaluate the claimant and

4

> review the claimant's medical record of evidence. Despite these factors, the undersigned affords the opinions of Dr. Hale only some weight.

Record at 60, 62.

The plaintiff complains that this discussion assigns "some weight" to Dr. Hale's opinion "with absolutely no explanation," in violation of 20 C.F.R. § 416.927(d)(2)(f)(2)(ii),[3] which requires the administrative law judge to "provide a good reason for discounting Dr. Hale's opinions[.]" Itemized Statement at 7. She asserts that this failure is not a harmless error because "[t]he significant limitations anticipated by Dr. Hale would very likely impact [her] RFC." *Id*. at 8. Of course, the test on appeal is not whether an error would "impact" a claimant's RFC, but rather whether it would change the outcome of the application. *Moody v. Colvin*, No. 1:12-cv-281-GZS, 2013 WL 3944287, at *6 (D. Me. July 31, 2013).

In addition, the cited regulation does not require an administrative law judge to give "good reason" for the weight he or she gives to a nontreating professional's opinion. *Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (" A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") The plaintiff's conclusory statement in this case is not enough to demonstrate that the outcome in this case would have been different if the administrative law judge had been more expansive in his assignment of "some weight" to Dr. Hale's opinions. *See, e.g., Evans v. Colvin*, No. 2:12-cv-235-JAW, 2013 WL 2145637, at *3 (D. Me. Apr. 26, 2013).

---

[3] There is no such regulation. 20 C.F.R. § 416.927(d)(2) deals with the weight to be given to the opinions of a treating professional. Dr. Hale, who saw the plaintiff once in order to evaluate her mental status at the request of her attorney, was not a treating professional. 20 C.F.R. § 416.927(d)(1) deals with examining professionals, the category to which Dr. Hale belongs. If the plaintiff meant also to cite 20 C.F.R. § 416.927(f)(2)(ii), that subsection deals with evaluation of the opinions of nonexamining state-agency reviewing professionals, and is not relevant to this issue. In addition, the cited subparagraphs of this regulation have been amended and are now found at 20 C.F.R. § 416.917(c) and (e).

With respect to Minervino's opinions, the plaintiff asserts, correctly, that "[t]he mere fact that Ms. Minervino is not an acceptable medical source is not a sufficient reason for rejecting her opinion." Itemized Statement at 8. However, the administrative law judge did not "reject" Minervino's opinions merely because she was not an acceptable medical source. Rather, he mentioned that rule to make clear that "Social Security Ruling 06-03p allows [nonacceptable medical] sources to show the severity of the individuals's impairments and how the impairments affect the claimant's ability to function." Record at 61. He gave Minervino's opinions "little weight" because she was not an acceptable medical source *and* because her treating notes did not support "an opinion that the claimant lacks the ability to engage in substantial gainful activity."[4] *Id.*

The plaintiff recites five excerpts from Minervino's notes that she characterizes as "consistent with her opinions regarding work capacity." Itemized Statement at 9.[5] That may well be, but the court does not need to reach that claim because the administrative law judge discussed entries in Minervino's notes that he found inconsistent with her conclusions at some length. Record at 59. That is all that is necessary. This court will not overturn an administrative law judge's conclusions where some of the evidence in the administrative record may be inconsistent with those conclusions, so long as substantial evidence is consistent with them. That is the case here.

---

[4] This opinion also addresses an issue that is reserved to the commissioner, "with respect to which even the opinion of a treating source is entitled to no 'special significance'[.]" *Tompkins v. Colvin,* No. 1:13-cv-73-GZS, 2014 WL 294474, at *4 (D. Me. Jan. 27, 2014); *see also* 20 C.F.R. § 416.927(c)(2)-(3).

[5] As the attorney for the defendant noted at oral argument, the plaintiff refers only to notes recorded in the first three months of Minervino's treatment of the plaintiff, and it is more appropriate to consider the substance of her notes over a full year of contact.

### C. Opinions of Dr. Knox

The plaintiff next challenges the administrative law judge's reliance on the opinions of Thomas Knox, Ph.D., a nonexamining psychologist reviewer, contending that his opinions are "not supported by substantial evidence." Itemized Statement at 10-11. She asserts that Dr. Knox "referred to evidence dated no later than February 28, 2010," after which her function report completed by her husband was submitted and after which she reported a worsening of her symptoms in March 2010. *Id*. Because Dr. Knox did not "acknowledge subsequent threat made by the ex-boyfriend or reconcile the impact of the contact on the Plaintiff's ability to function[,]" she argues, his opinion is not supported by substantial evidence. *Id*. at 11.

The defendant responds that Dr. Knox in fact discusses evidence through August 20, 2010. Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 17) at 8. This is correct. Psychiatric Review Technique Form, Record at 276 (giving dates for material reviewed through August 20, 2010, and mentioning report of plaintiff's husband). The document in which the plaintiff describes the March 2010 incident and her worsening symptoms, Record at 161-67, is undated but was submitted as part of the plaintiff's appeal from the first denial of her application, before any review would have been undertaken by Dr. Knox or any nonexamining professional reviewer.

Contrary to the plaintiff's argument, Dr. Knox did not fail to acknowledge her report of her ex-boyfriend's March 2010 threats and must be presumed to have considered its impact on her "ability to function." The plaintiff is not entitled to remand on this basis.

### D. Work History

The plaintiff next attacks, Itemized Statement at 11-12, the administrative law judge's statement that "[t]he claimant's credibility is limited by the lack of a strong work history[.]"

7

Record at 63. This court has held that work history is not an appropriate basis upon which the assess credibility. *Littlefield v. Astrue*, Docket No. 07-72-P-H, 2008 WL 648961, at *5 (D. Me. Mar. 5, 2008). This case is very similar to *Littlefield*. The defendant attempts to distinguish that case, asserting that "it is apparent that this consideration did not play a dispositive role in the decision." Opposition at 14.

Since *Littlefield*, this court has continued to refine the circumstances in which this error, standing alone, might require remand, but it has not applied the rule as broadly as the plaintiff would have it. Thus, in *Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 982225, at *7 (D. Me. Apr. 12, 2009), this court noted this and one other error in the administrative law judge's consideration of the claimant's credibility, but held that "the extensive consideration given to the topic, based on unchallenged or correct interpretations of the evidence, eclipses those errors and renders them insufficient to require a rejection of the administrative law judges' conclusion." *See also Hatch v. Astrue*, No. 2:10-cv-9-DBH, 2010 WL 5452124, at *6 (D. Me. Dec. 28, 2010) (same).

It may well be, to use the language of *Littlefield*, that "it is unclear how much emphasis [the administrative law judge] placed on the impermissible reason [of the claimant's work history]," 2008 WL 648961, at *5, but that was not the sole concern in *Littlefield*, where the court did not need to decide, as it does here, whether this error, standing alone, would require remand. As *Arsenault* made clear more than a year later, if the credibility analysis of which the erroneous reliance on work history was a part provides sufficient other reasons for the result of that analysis, use of a claimant's work history in this prohibited manner does not create reversible error.

8

In the case at hand, the administrative law judge gave other reasons supporting his conclusion that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Record at 59. These included her resistance to her therapist's suggestion that she learn to manage her panic attacks and PTSD "in order to return to work"; the objective medical evidence;[6] the plaintiff's treatment history and activities of daily living. *Id*. at 59-60. Against this list, the error in considering the plaintiff's work history, standing alone, does not undermine the administrative law judge's credibility assessment sufficiently to warrant remand.

### E. Third Party Function Report

The plaintiff's final assignment of error concerns the administrative law judge's treatment of a function report filled out by her husband. Itemized Statement at 12-17. The administrative law judge acknowledged that he was required to consider such lay opinions. Record at 62. He recounted many of the entries from the form, including one contradiction of the plaintiff's testimony. *Id*. He then evaluated the husband's report as follows:

> The statements provided by the claimant's husband in a third-party function report, (Exhibit 5E), is given little weight as it is a lay opinion based on casual observation rather than objective medical [] testing. These statements and opinions are also based upon loyalties of family. These statements and opinions certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe.

*Id*. at 62-63.

The plaintiff faults the administrative law judge for comparing her report of symptoms after March 2010 with her husband's report dated February 28, 2010, *id*. at 150, before the

---

[6] This included a Global Assesment of Functioning score of 60, indicating moderate symptoms or moderate difficulty in social or occupational functioning. Record at 60 & n.1.

incident of contact with her ex-boyfriend. Itemized Statement at 13-14. However, the administrative law judge mentioned only a single instance in which the husband's report differed from the plaintiff's report or testimony: whether the plaintiff went out alone and drove a car while doing so. Record at 62. In all other respects, the administrative law judge's account agrees with the plaintiff's position: her husband's report is consistent with the plaintiff's written reports and testimony. *Id*.

Indeed, the administrative law judge gave "reasons germane to" the plaintiff's husband for rejecting some of his report, as the plaintiff contends he was required to do, citing nonbinding precedent from the Ninth Circuit. Itemized Statement at 15-16. The plaintiff argues, however, that something more than the fact that it is a layperson who is filling out the report based on casual observations that are "based upon loyalties of family" is required. *Id*. at 16. Unfortunately, she cites no authority in support of this argument and does not suggest what that "something more" might be.[7]

The plaintiff has not established entitlement to remand on this basis.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for***

---

[7] The plaintiff does assert that, "had Mr. Beatty's observations and opinions been fully credited and placed in the correct time frame, the ALJ could have reached a different determination." Itemized Statement at 17. That is not the applicable legal standard, which requires a demonstration that the administrative law judge would or should have reached a different determination. In this case, that standard cannot be met due to the presence in the record of the reports of DDS reviewers whose findings support the administrative law judge's conclusions and are inconsistent with the portions of Mr. Beatty's report to which the plaintiff would apparently give controlling weight.

10

*which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge